UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                              CASE NO: 8:23-mj-1215-CEH-SPF

SALEH YUSUF SALEH
_____

### ORDER

This matter comes before the Court on Defendant Saleh Yusuf Saleh's Objection to Magistrate Judge's Order of Detention Pending Trial (Doc. 17). Saleh asks this Court to review a detention order rendered by Magistrate Judge Thomas M. Parker of the Northern District of Ohio on March 9, 2023. The Government opposes Saleh's motion (Doc. 25).

Upon review and consideration, and being fully advised in the premises, the Court will grant the motion and reverse the order of detention.

### Background

Saleh Yusuf Saleh and his co-Defendant, Yuendry Rodriguez Hilario, were arrested on Mach 2, 2023, in the Northern District of Ohio. The criminal complaint alleges that Saleh and Hilario engaged in a conspiracy to sell unlicensed firearms in furtherance of drug trafficking to undercover agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *See* Doc. 25 at 13-39. Saleh, who is alleged to be the supplier, participated in sales to the undercover agents on March 10, 2022, May 26, 2022, and March 2, 2023, while Hilario acted as the "middleman." *Id.*

at ¶¶ 27, 33, 41-42. During the transactions, Saleh told the agents that he had built the guns himself. *Id.* ¶ 33. The agents told him they would scratch off the serial numbers so the guns would not be traced back to him. *Id.* ¶¶ 27, 33. Saleh responded that he was considering beginning to make "ghost guns," which do not have serial numbers. *Id.* ¶ 33. The agents also told him the guns were going straight to Mexico, and that the first purchase of ten AR-pistols was a "small purchase" for their customers. *Id.* ¶¶ 27, 34.[1] The agents' purchases included a silencer and a machine gun, which Saleh showed them how to use. *Id.* ¶ 33. In total, the agents observed Saleh participate in the sale of 81 firearms. *Id.* at ¶¶ 27, 33, 41-42.

Saleh and Hilario were arrested at the scene of the March 2, 2023 sale. *Id.* ¶ 42. Both made inculpatory statements upon arrest. *Id.* ¶¶ 43-44. Explaining that he had met Hilario on a gun sale website called Arms List, Saleh admitted to building and selling the guns on all three occasions.

A detention hearing occurred in the Northern District of Ohio on March 8, 2023. *See* Transcript of March 8, 2023 Hearing (attached as Exhibit 1). The Government explained that Saleh was charged with four violations—unlicensed

---

[1] Although the agents referred to their customers as their "cartel associates" to Hilario on one occasion, *id.* ¶ 38, the criminal complaint does not allege that they referred to a cartel or drug trafficking when speaking with Saleh.

In addition, Hilario informed the agents in July 2022 that he could sell them fentanyl-related products, and they arranged for a future sale. *Id.* ¶¶ 35-37. There is no indication that Saleh was involved in or aware of the fentanyl sale, which ultimately did not occur. An agent also spoke with an unidentified co-conspirator in October 2021 about the sale of kilograms of cocaine. *Id.* ¶ 14. The allegations do not indicate Saleh was involved in or aware of this conversation.

dealing in firearms, the illegal transfer of firearms, the transfer of a firearm to commit a felony or drug trafficking offense, and possession of an unregistered firearm—that carry up to ten years' imprisonment each. *Id.* at 5. He was also charged with conspiracy to commit an offense against the United States, possession of a firearm in furtherance of a drug trafficking offense, which carries a maximum of lifetime imprisonment, and conspiracy to violate 18 U.S.C. § 924(c), which carries up to 20 years' imprisonment. *Id.* at 5-6.

The magistrate judge first determined that the statutory presumption in favor of detention in cases alleging a violation of § 924(c) did not apply, because the complaint did not allege that Saleh engaged in drug trafficking, and conspiracy to commit § 924(c) does not trigger the statutory presumption. *Id.* at 7-14; *see supra* n.1; 18 U.S.C. § 3142(e)(2)(A).

The Pretrial Services report, which recommended that Saleh be released on bond, was admitted into evidence. Ex. 1 at 17, 19. Saleh's father, cousin, aunt, and other family members attended the hearing. *Id.* at 18-19. Defense counsel explained that Saleh's father was also his employer, and Saleh resided with the cousin who was also in attendance. *Id.* Saleh's father told counsel that he would maintain Saleh's employment and ensure he had the financial means to make his court appearances in Florida. *Id.*

The Government requested an order of detention. *Id.* at 20-23. It argued that, although some of the detention factors weighed in favor of release, the facts of the case were concerning. *Id.* Specifically, Saleh appeared to have access to a lot more money

than could be accounted for by his employment, he was a self-admitted marijuana user, his use of the Arms List website indicated a long-term participation in the firearms business, and he was aware that the firearms he was selling would have their serial numbers scratched off and were likely going to a drug cartel in Mexico. *Id.* In all, the Government expressed concern that Saleh presented a risk of flight and of continuing his unlawful conduct. *Id.*

Arguing in favor of bond, defense counsel pointed out that Saleh had no criminal history, and that Pretrial Services found his statistical risk of flight and reoffense was low. *Id.* at 23-24. The presence of his family members at the hearing demonstrated his strong family support and community ties. *Id.* at 24. Saleh also had consistent employment and stable housing. *Id.* With respect to the Government's concern about resumption of the unlawful conduct, counsel suggested a condition of pretrial release that restricted his access to Arms List or other firearms website, similar to the type of restriction imposed for Internet-based offenses, in addition to the standard condition prohibiting access to firearms. *Id.* at 25, 29. Finally, counsel argued that the severity of the allegations is countered by the fact that they are shared with Hilario, who is the more culpable of the two co-Defendants. *Id.* at 27-28.

The magistrate judge issued a written order of detention on March 9, 2023. Doc. 11 at 6-8. The reasons for detention included: "the weight of evidence against the defendant is strong," he will be "subject to lengthy period of incarceration if convicted," and he has a "history of alcohol or substance abuse." *Id.* at 7. The magistrate judge found that the Government sustained its burden to show by clear and

convincing evidence that no condition or combination of bond conditions could be put in place that would reasonably ensure the safety of any other person or the community. *Id.* at 8. The magistrate judge also found that Saleh would have the ability to flee the jurisdiction because he conspired with his co-Defendant, who has significant ties to another country and who engaged in criminal conspiracies with intent to harm the United States. *Id.*

Saleh now seeks review of the order of detention. Doc. 17. Reiterating counsel's arguments and the facts elicited in the detention hearing, he argues that the evidence demonstrates he is not a danger to any person or the community and will not abscond. *Id.* at 4. Just as Pretrial Services determined, it is highly unlikely he will fail to appear or have a new criminal arrest. *Id.* He also pointed out that his substance use is limited to cannabinoids, and the only allegations of drug possession or trafficking in the case are connected with Hilario, not Saleh. *Id.*

The Government has responded in opposition. Doc. 25. It emphasizes that Saleh confessed to building and selling large numbers of guns, including a machine gun, with an awareness that they would be used for illegal and dangerous activity. *Id.* As a result, there is clear and convincing evidence he is a danger to the community, and there is a "lack of any compelling evidence that he is not[.]" *Id.* at 2. Even the most stringent of pretrial measures other than detention would be inadequate to ensure he did not flee and continue engaging in the criminal activity. *Id.* at 10-11. The Government therefore asks the Court to adopt the order of detention. *Id.*

## Discussion

Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge…the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." In that event, "the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." *U.S. v. King*, 849 F.2d 485, 490 (11th Cir. 1988). The district court's review is *de novo*. *See, e.g.*, *U.S. v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) ("[T]he findings made and conclusions reached by the first magistrate to consider release do not have to be found to be clearly erroneous before any modification to the magistrate's order can be made. Rather the reviewing court…may conduct a *de novo* review of the same facts and considerations that impelled the original magistrate's order."). "In conducting this *de novo* review, a hearing is not required and the district court may rely entirely on the pleadings and the evidence developed at the magistrate's detention hearing, or it may conclude that additional evidence is necessary and conduct its own evidentiary hearing." *U.S. v. Ensley*, No. 1:12-mj-1460-LTW, 2012 WL 5463899, *1 (N.D. Ga. Nov. 8, 2012), citing *King*, 849 F.2d at 490.

There is a presumption against holding a defendant pending trial. *U.S. v. Salerno*, 481 U.S. 739, 755 (1987). Under the Bail Reform Act, detention will be warranted only if there are no conditions of release that can be imposed to reasonably ensure the appearance of the defendant and also protect the community. *See* 18 U.S.C. § 3142(g).

The Government bears the burden of proving by a preponderance of the evidence that a defendant is a flight risk, or by clear and convincing evidence that he is a danger to the community. *See King*, 849 F.2d at 489. The concept of "dangerousness" refers to the danger that the defendant might engage in criminal activity to the detriment of the community. *Id.* at 487 n.2.

The Bail Reform Act lists multiple factors for a court to take into account when making a detention determination:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Here, the Court finds that pretrial detention is not the only means to ensure Saleh's return to court or to protect the community from danger. First, the

Government has not proven by a preponderance of the evidence that Saleh presents a flight risk. Contrary to the statements in the order of detention, Saleh's ties to other countries are not significant. Although the Government notes that he previously traveled to Palestine, Doc. 25 at 7, defense counsel states that the trip occurred in 2012 and Saleh does not currently have a passport. Doc. 17 at 4. There are also no allegations in the complaint that Saleh communicated with anyone other than Hilario, who is also detained and is subject to removal or deportation if he serves any period of incarceration. *See* Case No. 8:23-cr-109, Doc. 10 at 7. These facts cast doubt on the magistrate judge's finding that Saleh's criminal contacts will provide him with the opportunity or ability to abscond.

In contrast to his lack of significant foreign ties, Saleh's community ties are particularly strong. He is employed full-time by his father, he has stable housing with a cousin, and he enjoys the support of several family members who attended the detention hearing. His father attested that he will provide the financial means for Saleh to appear before this Court. There is no evidence of a mental health condition or a significant drug addiction that would impede his ability to appear in court.[2] Moreover, despite the sentencing exposure Saleh faces if convicted, Pretrial Services determined there is a statistically low risk that he will fail to appear. The Court concludes that the Government has not met its burden of proving by a preponderance of the evidence that detention is necessary to ensure Saleh's appearance before this Court.

---

[2] The Court is not persuaded that Saleh's history of marijuana use contributes significantly to a finding that detention is necessary to ensure his appearance or protect the public safety.

8

The Government primarily argues that detention is necessary to protect the community from continued criminal conduct. In this regard, the Court acknowledges that the first two § 3142(g) factors—the nature of the offense and the weight of the evidence—weigh against Saleh's release. His alleged conduct is undeniably serious, he faces a significant sentence if convicted, and the evidence appears strong.[3] Should he continue to engage in the same conduct of building and selling firearms, the community would undoubtedly be harmed. However, the Government has not met its burden of proving that detention is necessary to ensure Saleh will not continue his alleged past conduct. Rather, the Court concludes that strict conditions of pretrial release are likely to prevent Saleh from reoffending. *See* 18 U.S.C. § 3142(g)(4). These conditions will include house arrest and GPS monitoring, the prohibition of access to any form of firearm, and the monitoring of Internet activity on any device to which Saleh has regular access. Accordingly, the Government has not shown by clear and convincing evidence that no combination of conditions will protect the community. *See id.* § 3142(f).

In determining whether detention is necessary, a court does not mechanically weigh the § 3142(g) factors, but rather "makes a judgment about the persuasiveness of

---

[3] Nonetheless, the Court is not persuaded by the Government's equation of the charges against Hilario and Saleh. Doc. 25 at 7-8. The Government emphasizes Saleh's potential sentencing exposure for the charge of conspiracy to possess a firearm in furtherance of drug trafficking. But, as the magistrate judge observed, Ex. 1 at 10, 14, the complaint does not make clear that Saleh, as opposed to Hilario, engaged in any overt acts in furtherance of drug trafficking. Nor do the allegations establish Saleh's knowledge that the firearms were being sold to cartel members. *Cf.* Doc. 25 at 1, 10.

the evidence offered by each party[.]" *U.S. v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted).  Here, the factors listed under § 3142(g)(3) weigh in favor of Saleh's pretrial release.  His lack of any criminal history, his strong community ties and family support, and the recommendation of Pretrial Services all support a finding that detention is not necessary to ensure his appearance and the community's safety.  In this case, the Court finds that § 3142(g)(3) and (4) outweigh the other factors.  Significantly, there are conditions of release adequate to ensure his return to court and to protect the community.  The Court concludes that the detention order should be reversed.

Accordingly, it is **ORDERED**:

1. Defendant Saleh Yusuf Saleh's Objection to Magistrate Judge's Order of Detention Pending Trial (Doc. 17) is **GRANTED**.

2. The Magistrate Judge's Order of Detention Pending Trial (Doc. 11 at 6-8) is **REVERSED**.

3. Saleh's release from detention is **STAYED** pending the imposition of bail conditions.

4. The imposition of appropriate bail conditions is **REFERRED** to Magistrate Judge Sean P. Flynn, who shall enter an order setting conditions of release in accord with this Order.

**DONE** and **ORDERED** in Tampa, Florida on April 24, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Magistrate Judge Sean P. Flynn
Counsel of Record